PER CURIAM:
In this 42 U.S.C. § 1983 action, we consider whether a police officer who used deadly force is entitled to qualified immunity. In December 2008, two West Virginia State Police troopers, W.S. Snyder and appellant L.W. Price, blocked appellee Stephen Krein’s vehicle at a gas station in Roane County, West Virginia. When Krein pulled forward in an attempt to evade the troopers, Price fired twice at Krein’s vehicle, striking him in the head and leaving him permanently disabled.
*185 In December 2010, Krein sued Price, Snyder, and the State Police in West Virginia state court, alleging, inter alia, violations of his civil rights under § 1988. After the defendants removed the case to federal court, the district court denied the defendants’ motion for summary judgment, finding that several disputed issues of material fact precluded judgment as a matter of law on their qualified immunity defense.
As explained below, we find that sufficient evidence exists for a factfinder to determine that Price’s second shot was objectively unreasonable and thus constituted “excessive force” prohibited by the Fourth Amendment. We also conclude that the Fourth Amendment’s prohibition on excessive force in this circumstance was a “clearly established” constitutional right, and that Price, as a West Virginia trooper, was charged with notice of this clearly established constitutional right. Accordingly, we affirm.
I.
A.
W.S. Snyder and appellant L.W. Price are troopers of the West Virginia State Police. On December 1, 2009, they set out to serve arrest warrants on appellee Stephen S. Krein. The warrants stemmed from an incident occurring a week earlier when two other officers attempted to arrest Krein for misdemeanor domestic violence. That time, Krein successfully fled and almost drove into one of the officers.
Price and Snyder located Krein’s white Chevrolet truck at a gas station in Roane County, West Virginia. Although witnesses[1] disagree about the relative positions of the vehicles and individuals during the confrontation, witness testimony supports the following: Krein’s truck was backed into a parking space and faced the adjoining road. Facing the same direction, a maroon car was parked ten feet to the left of the truck. At least one set of fuel pumps was located ten feet to the right of the truck, and another set of pumps was located either next to Krein’s truck or behind it.
When the officers arrived at the store, Krein was pulling forward in his truck. To prevent Krein from escaping, Price positioned his cruiser at an angle in front of Krein’s truck, with the cruiser’s passenger-side door facing the truck. Krein then backed up, hitting a fuel pump. Price and Snyder exited the cruiser. Price left the passenger-side door open. Krein pulled forward and bumped the passenger-side door of the cruiser with enough force to close it. Krein then “backed up and ... cut[ ] his wheel to come out in between a small opening [between the cruiser and the maroon car]. He was trying to get out.” J.A. 43. Both Price and Snyder drew their service weapons and repeatedly told Krein to stop and exit the vehicle. Snyder was standing near the truck’s driver-side door and close to the maroon car. Price walked in front of the truck and stood between the truck and the cruiser.
When Krein drove forward toward Price, Price fired a shot that either hit the truck’s grill or went under the truck. Krein then ducked inside the truck, turned the steering wheel, and accelerated toward Snyder. Snyder moved toward the maroon car to ,get out of Krein’s way, and Price “stepped off to the side.” J.A. 53. Both Price and Snyder stated that Price was trapped. See J.A. 45 (“I tried the best *186 to get out of the way because I didn’t have anywhere to go.”); J.A. 52 (“[I]t was kind of like a triangle shape and ... Trooper Price was wedged in the center of it, didn’t have no way to escape.”). A witness claims, however, that Price got out of harm’s way when he stepped to the side. See J.A. 60 (“Mr. Krein would have hit the trooper with his truck if the trooper had not taken a quick step to his right[.]”). Price then fired a second shot, which went through the truck’s passenger-side window and struck Krein in the head. The entire encounter lasted approximately one minute.
After Price shot Krein, the truck coasted through the gap between the maroon car and cruiser and stopped in the road. A witness called 911 and said, “Two state troopers, a truck tried to run over them there and they had to fire shots.” J.A. 71. He also said that the troopers “fired shots when [Krein] was pulling around them.” Id. Price and Snyder removed Krein from the truck and administered first aid until the paramedics arrived. Krein survived the gunshot wound to his head, but due to his injury, he cannot walk, speak properly, or care for himself.
B.
In December 2010, Krein sued Price and Snyder (individually and in their official capacities) and the West Virginia State Police (collectively, “Defendants”) in state court. The district court ruled on a motion to dismiss, five claims remained, including a 42 U.S.C. § 1983 claim alleging that Price used excessive force in violation of the Fourth Amendment. In January 2013, the State Police and Price moved for summary judgment. As to the § 1983 claim, the district court denied summary judgment because a reasonable factfinder could conclude that Price did not act reasonably when he used deadly force. According to the district court, the evidence demonstrates that Price may have shot Krein simply to prevent Krein’s escape rather than to save Price’s or another’s life. Thus, the district court found that Price was not entitled to qualified immunity. Price appeals that determination.
II.
A.
This Circuit has jurisdiction to review a district court’s denial of qualified immunity at summary judgment if the court’s decision turned on an issue of law. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Cooper v. Sheehan, 735 F.3d 153, 157 (4th Cir.2013). Qualified immunity acts as “an immunity from suit rather than a defense to liability.” Mitchell, 472 U.S. at 526, 105 S.Ct. 2806. “As a result, pretrial orders denying qualified immunity generally fall within the collateral order doctrine.” Plumhoff v. Rickard,-U.S.-, 134 S.Ct. 2012, 2019, 188 L.Ed.2d 1056 (2014) (citing Ashcroft v. Iqbal, 556 U.S. 662, 671-672, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Immunity — as a defense to prosecution in the first instance — is a separate issue from the merits and “could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost.” Id. (citations omitted).
B.
We review a district court’s denial of summary judgment on qualified-immunity grounds de novo. Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir.1992). In doing so, we view the evidence in the light most favorable to the nonmoving party, and can grant summary judgment only if there is no genuine issue of material fact. Iko v. Shreve, 535 F.3d 225, 230, 235 (4th Cir. *187 2008). Similarly, in reviewing a district court’s denial of qualified immunity, we generally accept the facts as the district court found them, Winfield v. Bass, 106 F.3d 525, 530 (4th Cir.1997) (en banc), though we must also view them in the light most favorable to the nonmoving party. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir;2011) (en banc). Price, as the public official asserting qualified immunity, bears the burden of proof. Meyers v. Balt. (My., 713 F.3d 723, 731 (4th Cir.2013).
III.
Having concluded that we have jurisdiction, we turn to Price’s contention that qualified immunity shields him from Krein’s § 1983 claim.
A.
Qualified immunity protects “government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine of qualified immunity “balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.” Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).
To receive qualified immunity, Price must prove either (1) that his conduct did not violate the constitutional right at issue (here, the Fourth Amendment’s prohibition on excessive force) or (2) that the right was not “clearly established” at the time of the incident. Id. at 232, 236, 129 S.Ct. 808. For purposes of summary judgment, Price cannot satisfy either prong.
B.
Price contends that he satisfies the first prong because his conduct did not constitute excessive force prohibited by the Fourth Amendment. In support, Price argues that the district court improperly considered his subjective intent in shooting Krein. Although Price correctly notes that his subjective intent is irrelevant to the Fourth Amendment analysis for objective reasonableness, there is sufficient evidence in the record for a reasonable fact-finder to conclude that Price’s second shot — fired from the side of Krein’s vehicle — was excessive.
The Fourth Amendment protects “people ... against unreasonable ... seizures.” U.S. Const, amend. IV. This prohibition “includes the right to be free of ‘seizures effectuated by excessive force.’ ” Henry v. Purnell, 652 F.3d 524, 531 (4th Cir.2011) (en banc) (quoting Schultz v. Braga, 455 F.3d 470, 476 (4th Cir.2006)). Courts analyze whether an officer used excessive force using an “objective reasonableness” test. Id. (citing Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). Under this standard, a court considers officers’ behavior “in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.” Id. (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Indeed, “[a]n officer’s evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force.” Graham, 490 U.S. at 397, 109 S.Ct. 1865.
An officer acts unreasonably if he or she “shoots a fleeing suspect without ‘probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.’ ” Henry, *188 652 F.3d at 531-32 (quoting Tennessee v. Gamer, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). This assessment occurs at the moment that force is used. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir.1996).
Therefore, we must ask whether the facts — viewed in the light most favorable to Krein — demonstrate that Krein posed a serious threat to Price, Snyder, or the other individuals present at the scene when Price fired the second shot.[2]
Based on our review of the record, a reasonable factfinder could conclude that Krein no longer posed a serious threat to the troopers at the time that Price fired his second shot. Admittedly, the record contains conflicting information regarding whether Price and Snyder were at risk of being struck when Price fired the second shot. Price and Snyder testified that Price was still in danger when he fired the second shot. Price explained that he “tried the best to get out of the way because [he] didn’t have anywhere to go” and that he “felt [his] life was threatened.” J.A. 45, 47. He also explained that Krein “could possibly have cut a hard left but then Trooper Snyder’s life would have been in danger.” Id. at 47-48. Trooper Snyder said that Price “had no way to escape” and that “if [Krein] had come forward any more ... Trooper Price would have been pinned between the vehicle and his truck.” Id. at 52, 57. Jett and McKinney, the two bystanders, similarly believed that Price was in serious danger. Id. at 61 (Jett); Id. at 66 (McKinney).
But at the summary judgment stage, we must view the facts in the light most favorable to Krein. Waterman v. Batton, 393 F.3d 471, 473 (4th Cir.2005). Taken in that light, the record contains numerous indications that Price and Snyder would have been able to escape Krein’s truck without Price firing the second shot.[3] Most importantly, Price’s second shot entered through the passenger side window of Krein’s truck, strongly suggesting that Price was not in front of the truck when he fired on Krein the second time. Multiple statements also indicate that Price and Snyder were not in danger when Price fired the second time. Price explained that he “got out of the way” when he fired the second shot. J.A. 45. Snyder said he “went down the side of the vehicle that was parked beside Mr. Krein to get away from him.” Id. at 52. He also said that Price was “at like a 45 degree angle off’ from Krein’s truck when Price fired the second time. Id. at 55. Jett, one of the bystanders, said that “Mr. Krein would have hit the trooper with his truck if the trooper had not taken a quick step to the right.” Id. at 60. When Jett called 911, he stated, “[t]wo state troopers, a truck tried to run over them there and they had to fire shots” but also stated that the troopers “fired shots when [Krein] was pulling around then.” Id. at Ex. A. *189 McKinney said that Price “jumped back out of the way.” Id. at 66.
It is true that “[t]he calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split — second judgments — in circumstances that are tense, uncertain and rapidly evolving — about the amount of force that is necessary in a particular situation.” Park v. Shiflett, 250 F.3d 843, 853 (4th Cir.2001) (quoting Graham, 490 U.S. at 396-97, 109 S.Ct. 1865). But even allowing Price some leeway to account for the tense, hurried nature of the incident cannot change the fact that the record contains numerous indications that a reasonable officer would have realized that deadly force was not necessary to protect himself or others when he was no longer in the direction of Krein’s vehicle. Accordingly, viewing the facts in the light most reasonable to Krein, a reasonable fact-finder could conclude that Price acted unreasonably when he shot Krein.
C.
Price also cannot satisfy the second prong of the qualified immunity test because the constitutional right that Price violated was “clearly established.” Harlow, 457 U.S. at 818-19, 102 S.Ct. 2727. The right at issue here is the right to be “free from unreasonable seizures, a right which includes seizures accomplished by excessive force.” Waterman, 393 F.3d at 475. “A defendant cannot be said to have violated a clearly established right unless the right’s contours were sufficiently definite that any reasonable official in the defendant’s shoes would have understood that he was violating it.” Plumhoff v. Rickard,—U.S.-, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014) (citing Ashcroft v. al-Kidd,—U.S.-, 131 S.Ct. 2074, 2083-84, 179 L.Ed.2d 1149 (2011)). Although courts should not “define clearly established law at a high level of generality,” al-Kidd, 131 S.Ct. at 2084, this Court need not determine that the “very action in question has previously been held unlawful,” Doe ex rel. Johnson v. S.C. Dep’t of Soc. Servs., 597 F.3d 163, 176 (4th Cir.2010) (citation omitted). “[Officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
Our decision in Waterman v. Batton demonstrates that the right Price allegedly violated is clearly established. 393 F.3d at 483; see also Estate of Rodgers ex rel. Rodgers v. Smith, 188 Fed.Appx. 175, 183-184 (4th Cir.2006) (determining that the law established in Waterman was clear). In that case, a police officer attempted to initiate a traffic stop of Waterman for speeding, but Waterman refused. 393 F.3d at 473. Officers then pursued Waterman. Id. One officer reported that Waterman tried to run him off the road. Id. at 474. When Waterman reached a toll plaza, five uniformed officers stood in front of his vehicle, “only a few feet to the passenger side of the vehicle’s projected path.” Id. at 474-75. Waterman coasted at about 11 miles per hour and then began “lurching or lunging forward” as he began to accelerate toward the toll plaza and the officers. Id. at 474 (internal quotation marks omitted). The officers shot at the vehicle, which avoided them by several feet as it passed. Id. at 475. The officers continued to fire on Waterman as he drove away. Id. Waterman sustained five gunshot wounds and died from his injuries. Id.
As we explained, “the reasonableness of an officer’s actions is determined based on the information possessed by the officer at the moment that force is employed.” Id. at 481 (emphasis added). Based on that *190 principle, we concluded that “force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.” Id. We distinguished when Waterman’s car was passing the officers— finding that they reasonably feared for their safety at that point — from when Waterman’s car had passed them — finding that the danger had also passed. Id. at 482. The shots fired at Waterman after he had passed the officers in his car constituted excessive force. Id. At that point, the officers and bystanders were not endangered by Waterman’s vehicle. Id.
A similar distinction between two sets of gunshots can be made here. Like the officers in Waterman, Price was in danger when he fired the first shot because he was directly in front of the vehicle. But just seconds later, he was on the passenger side of the vehicle and thus was no longer in danger of being hit. The other officer, Snyder, was similarly not threatened when Price fired the second time. As our decision in Waterman demonstrates, these types of fine distinctions must be made to give proper effect to the Fourth Amendment’s prohibition on excessive force.
Indeed, the overall circumstances in this case were less dangerous, than in Waterman. There, the officers fired at Waterman in the context of a high-speed chase. Here, however, Krein’s vehicle was effectively trapped by the troopers’ vehicle and Krein was not driving at a high speed. Viewing the evidence in the light most favorable to Krein, Price and Snyder were not at serious risk of being struck by Krein’s vehicle when Price fired the second shot. As such, Price’s second shot violated the clearly established law this Circuit set out in Waterman.
IV.
For the foregoing reasons, the district court’s order denying Price’s motion for summary judgment is

AFFIRMED.

. Krein, who was seriously injured in the incident, does not remember the confrontation at the gas station. The following sequence of events stems from the statements of Price, Snyder, and two witnesses — Billy James Jett and Richard McKinney — who were waiting in the parking lot to pick up their wives from work.

. Price’s second shot is the only one at issue in this case. The parties do not dispute whether Price’s first shot was objectively reasonable.

. As Price notes, the district court made repeated references to Price’s motivations in firing on Krein, stating that "Trooper Price's admission that Krein had previously escaped his custody should suggest that a desire to prevent a similar escape rather than the fear of harm motivated Trooper Price’s actions.” J.A. 84. Price’s motivation, in the district court's view, precluded qualified immunity: "If, as Krein appears to suggest, Trooper Price fired the second shot not out of fear for his or Trooper Snyder's safety or concern that Krein might present a threat to another, but merely to thwart Krein’s escape, granting qualified immunity would be improper.” Id. at 89. Although the district court may have improperly considered Price's subjective intent, any such error is irrelevant because we review the district court’s denial of qualified immunity de novo. Pritchett, 973 F.2d at 313.