Lucy N. LOGAN, Appellant,

v.

Norris SHEALY, Earl L. Johnson, Jr., William F. Vance, J. Elwood Clements, James A. Gondles, Thomas W. Shortt, Carol J. Sachtleben, Arlington County, Virginia, Appellees,

and

Henry E. Hudson, Robert E. Turner, Henri Nava, William S. Burroughs, Jr., Defendants.

American Civil Liberties Union of Virginia and the American Civil Liberties Union Fund of the Nat'l. Capital Area, /A Amici Curiae.

No. 80–1815.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1981.

Decided Oct. 7, 1981.

Thomas A. Guidoboni, Washington, D. C., for appellant.

Jerry K. Emrich, Arlington County Atty., Arlington, Va. (David R. Lasso, Asst. County Atty., Arlington, Va., on brief), for appellees Shealy, Johnson, Vance, Shortt and Arlington County.

Claude M. Hilton, Arlington, Va., for appellee Clements.

Peter T. Tonnessen, Bailey's Crossroads, Va. (Albert J. Ahern, Jr., Bailey's Crossroads, Va., on brief), for appellee Sachtleben.

Clausen Ely, Jr., Donna M. Murasky, Ellen J. Flannery, Covington & Burling, Washington, D. C., on brief, for amici curiae.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge and PHILLIPS, Circuit Judge.

PHILLIPS, Circuit Judge:

Lucy Logan appeals the rejection by summary judgment and directed verdict of her several claims brought under 42 U.S.C. § 1983 and state law, against Arlington County and various judicial, prosecutorial, and law enforcement officers whose conduct incident to her arrest, detention, and strip search allegedly violated rights protected by the federal constitution and state law. We affirm the dismissal of all her claims except those related to the strip search of her person. As to those, we reverse and remand for further proceedings against certain of the defendants.

## I

At approximately 7:30 p. m. on March 6, 1979, Logan, an attorney, was involved in a two-car collision in Arlington County, Virginia. The investigating officer, Thomas Shortt, suspected Logan had been driving while intoxicated. After giving Logan field alcoholic tests which she failed, Officer Shortt placed Logan under arrest and told her that he was taking her to the police station for a breathalyzer test. Logan asked to call her friend, Lorelei Haig, also an attorney, because the two had been together shortly before the accident and Haig knew how much alcohol Logan had consumed. Officer Shortt refused to permit the call and had Logan transported to the Arlington County Detention Center in a police cruiser. Logan arrived at the Detention Center at approximately 8:20 p. m.; Officer Shortt arrived shortly thereafter. Logan's car was impounded.

The exact sequence of events following Logan's arrival at the Detention Center is in some dispute on the testimony adduced at trial. Logan testified that she was taken before a magistrate,[1] who issued an arrest warrant for driving while intoxicated (D.W. I.), Va.Code § 18.2–266 (Cum.Supp.1981);

---

1. Logan could not remember the magistrate before whom she appeared. Chief Magistrate Shealy was not present on March 6, 1979, and

Magistrate Johnson, who knew Logan, asked Magistrate Vance to process her.

that Officer Shortt then took her for a breathalyzer test; that she requested permission first to make a telephone call to Lorelei Haig which Officer Shortt refused to permit; and that Officer Shortt then took her back to the magistrate, who issued a second warrant for her refusal to take the test in violation of Virginia's implied consent law, Va.Code § 18.2–268 (Cum.Supp. 1981). Officer Shortt's version is somewhat different. He testified that Logan first was taken to the breathalyzer unit, where she refused to take the test before calling Haig; that he refused Logan permission to make the call because he understood that she had no legal right to contact an attorney at that time; that when Logan still refused to take the test, he took her before Magistrate Vance, who persuaded Logan to take the test; that he, Officer Shortt, then took Logan back to the breathalyzer unit, where she again refused to be tested before calling Haig; and that he immediately returned her to the magistrate who issued the arrest warrant for D.W.I. and the second warrant for Logan's refusal.

In any event, after both warrants had been issued, Logan was booked and again went before the magistrate for a bond hearing. Logan testified that Magistrate Vance released her on her own recognizance, but then told Logan that according to a policy she would be unable to leave the Detention Center for four hours or until a responsible person came for her. Magistrate Vance denied that there was a firm policy to hold all D.W.I. arrestees for four hours to assure their sobriety. In this case, however, he directed that Logan was to be held for that length of time or until a responsible person took custody of her and she was then to be released upon personal recognizance. Magistrate Vance also did not permit Logan to call Haig because the magistrates' office did not have a phone available for arrestees' use and he understood that the sheriff would permit the call; Vance therefore informed Logan that she could make a telephone call upon commitment to jail. Officer Shortt then turned Logan over to the sheriff's custody at approximately 9:50 p. m. and left.

Logan immediately asked Deputy Sheriff Carol Sachtleben[2] for permission to call Lorelei Haig. In accordance with then Sheriff Clements' policy, however, Deputy Sachtleben first inventoried Logan's personal property and then took her to a holding cell and conducted a visual strip search. Sheriff Clements had established this policy—to strip search all persons held at the Detention Center for weapons or contraband regardless of their offense—in 1974–75 after a deputy allegedly was shot by a misdemeanant who had not been strip-searched. Logan testified that the window blinds in the holding cell were either open or broken and permitted anyone in the booking area to observe her strip search. Deputy Sachtleben testified that the blinds were closed and no one could see into or out of the holding cell during the search. Once the strip search was completed, Deputy Sachtleben brought a telephone to the holding cell and Logan called Lorelei Haig. At 10:55 p. m., Logan was released to Haig.

Logan subsequently brought this action for damages and for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging the deprivation of various civil rights.[3] Her § 1983 claims were basically three.

■ The first claim related to the denial of Logan's request to make a telephone call. The actions of Magistrates Johnson and Vance, Police Officer Shortt, Deputy Sheriffs Sachtleben and Turner, and Correctional Officer Nava in refusing her permission to call her attorney, Lorelei Haig, until after the strip search was completed even though the two arrest warrants had issued earlier[4] were claimed to have violated her

2. According to her amended complaint, Logan was turned over to Deputy Sheriff Robert Turner and Correctional Officer Henri Nava, who escorted her to Deputy Sheriff Carol Sachtleben.

3. Logan also asserted various pendent state claims which were later dismissed.

4. In her brief on appeal, Logan also asserts this claim against Arlington County. We decline to address the contention because Arlington County was not included as a defendant with respect to this claim in Logan's amended complaint, no evidence was presented at trial, and we find the claim to be without merit.

sixth amendment right to the assistance of counsel.

The second claim related to Logan's detention. She alleged that either Magistrate Johnson or Vance or both ordered her to be committed to the Arlington County Detention Center for approximately four hours, after releasing her on her personal recognizance, pursuant to a policy of Arlington County to detain all D.W.I. arrestees for that length of time regardless of their individual circumstances. According to Logan's allegations, this policy was promulgated by Chief Magistrate Norris Shealy and William Burroughs, who was the Commonwealth Attorney for Arlington County in March 1979 when Logan was arrested, while the three magistrates—Shealy, Johnson, and Vance—continued to enforce it upon the advice of the present Commonwealth Attorney, Henry Hudson. Application of this detention policy was claimed to violate her fourth amendment right to be free from unreasonable seizure, her eighth amendment rights to be free from excessive bail and from cruel and unusual punishment, and her fourteenth amendment right not to be deprived of her liberty without due process of law. Hudson was sued in his official capacity only; the other defendants were sued in their individual and official capacities.

Logan's third claim concerned the strip search. It was brought against Officer Shortt, Deputy Turner, and Correctional Officer Nava, who escorted her to Deputy Sachtleben; against Sachtleben who allegedly conducted the search in an area exposed to public view; against then Sheriff Clements who promulgated the policy; against Magistrate Shealy and then Commonwealth Attorney Burroughs who advised adoption of the policy; against present Sheriff Gondles who continued to enforce the policy; and against Arlington County whose policy it was alleged to be. The policy as enforced was alleged to be unreasonable in scope and manner, being conducted without a warrant or probable cause, hence to violate unspecified fourth and fourteenth amendment rights, and to constitute cruel and unusual punishment in violation of the eighth amendment. Gon-

dles was sued in his official capacity only; the other defendants were sued in their individual and official capacities. This claim as well as the second was asserted against Arlington County on the basis of *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In addition to seeking compensatory and punitive damages from defendants Shealy, Johnson, Vance, Burroughs, Clements, Shortt, Turner, Nava, Sachtleben, and Arlington County, Logan prayed for a declaration that the telephone call, detention, and strip search policies were unconstitutional and for a permanent injunction restraining Shealy, Johnson, Vance, Hudson, Gondles, and Arlington County from enforcing those policies.

Before trial, on Logan's motion, the district court dismissed the claims for monetary relief against the present Commonwealth Attorney, Hudson, and the present Sheriff, Gondles, and all claims against Deputy Turner and Correctional Officer Nava. The remaining defendants moved for summary judgment, and the court granted partial summary judgment to the three magistrates on the claims for monetary relief because of their judicial immunity, and summary judgment on all claims to ex-Commonwealth Attorney Burroughs. The other defendants' motions were denied. At this point there remained for disposition the claims for declaratory and injunctive relief alleged in respect of the telephone call, detention, and strip search policies variously against Magistrates Shealy, Johnson, and Vance, Commonwealth Attorney Hudson, Sheriff Gondles, and Arlington County and the claims for damages alleged against Officer Shortt on the denial of counsel claim, Arlington County on the four-hour detention claim, and Arlington County, Sheriff Clements, Deputy Sachtleben, and Officer Shortt on the strip search claim.

The case proceeded to trial before a jury on all the claims for monetary relief. At the close of the plaintiff's evidence, the

district court directed a verdict for Arlington County on the detention claim on the basis of a failure to prove the existence of any policy under which magistrates were directed to hold all persons arrested for D.W.I. for four hours and on the basis that Logan's detention until Haig's arrival was, under the circumstances, reasonable.[5] At the close of all the evidence, the district court directed verdicts for all the individual defendants.

The district court held that on the evidence presented, Officer Shortt's defense of good faith immunity to the denial of counsel claim was established. Assuming Logan had a constitutional right to make the telephone call, Officer Shortt had simply followed standard procedures, binding upon him, in denying it before she was processed.

Similarly it found that Deputy Sachtleben's good faith defense was established. She had relied in good faith on the Sheriff's policy in conducting the strip search and had performed the search in accordance with that policy. Even if the blinds were open, there was no evidence that anyone had in fact looked into the holding cell during the search.

Finally, even though Sheriff Clements had stipulated that he had instituted the across-the-board strip search policy, the court also directed a verdict for Clements on the stated, unelaborated basis that while he had instituted the policy, he was not liable for enforcing it.[6] Notwithstanding this disposition of the strip search damage claim against Sheriff Clements, the court nevertheless expressed concern whether the policy might require modification to pass constitutional muster, and instructed the

parties to present additional authority on the constitutional issue in connection with Logan's remaining claims for declaratory and injunctive relief.

After posttrial briefing and argument, the district court denied Logan's request for declaratory and injunctive relief as to both the telephone call, detention, and strip search policies. *Logan v. Shealy*, 500 F.Supp. 502 (E.D.Va.1980). The court ruled that Logan's sixth amendment right to counsel was not abridged. She was allowed to call her attorney shortly after being formally charged and the right does not accrue immediately upon arrest. *Id.* at 505 (citing *United States v. DuVall*, 537 F.2d 15 (2d Cir. 1976)). The district court held that the strip search policy was constitutional under *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), reasoning that Logan had not shown that intoxicated detainees should be treated differently in this respect than other detainees, and that she had failed to carry the burden of showing that Sheriff Clements' policy was an exaggerated response to genuine security considerations. *Id.* at 505–06.

This appeal followed. Logan challenges the district court's action in granting directed verdicts and summary judgments on the various monetary claims, in denying all declaratory and injunctive relief, and in excluding or limiting some evidence.

## II

 We find no reversible error in any of the district court's rulings except those related to the claims growing out of the strip search. Specifically we affirm, on the

---

5. Though the strip search claim for damages against Arlington County had not been formally dismissed before trial, it was not addressed by the court at trial. On appeal the County has contended that the claim was formally abandoned by Logan in pre-trial conference, a contention not conceded by Logan. We cannot resolve that on the record before us, and the question will have to be addressed by the trial court on the remand we direct.

6. The exact basis for the court's directed verdict in favor of Sheriff Clements is not clear from the record. Theoretically it could have been on either of two grounds: that the strip

search policy was, as a matter of law, not shown to be unconstitutional, or that, assuming its unconstitutionality, the evidence conclusively established Clements' good faith in promulgating it, hence his immunity to the monetary claim. While the good faith defense is not directly adverted to, the district court's subsequent consideration of the claim for declaratory and injunctive relief in respect of the strip search policy strongly suggests that good faith rather than constitutionality was the basis for the directed verdict ruling at the time it was made. In view of our disposition, the exact basis is immaterial.

basis of the district court's reasoning, its rulings that the evidence failed to show any violation of constitutional right in connection with Logan's detention pending arrival of Haig, or in connection with the refusal of permission to make telephone calls; that the magistrates were, in any event, entitled to judicial immunity in respect of all monetary claims; that Officer Shortt was, in any event, entitled to a good faith immunity defense to the claim for monetary relief for denial of counsel; and that the evidence against Officer Shortt on the strip search was insufficient for submission to the jury.

### III

■ With respect to the strip search claims, we find error requiring reversal and remand for further proceedings. Specifically we hold that on the evidence stipulated and adduced at trial the strip search policy promulgated by Sheriff Clements and enforced by his department was conclusively shown to be unconstitutional under the standards laid out in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447.

Strip searches of detainees are constitutionally constrained by due process requirements of reasonableness under the circumstances.

> In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. On the undisputed and stipulated evidence, Logan's strip search bore no such discernible relationship to security needs at the Detention Center that, when balanced against the ultimate invasion of personal rights involved, it could reasonably be thought justified. At no time would Logan or similar detainees be intermingled with the general jail population; her offense, though not a minor traffic offense, was nevertheless one not commonly associated by its very nature with the possession of weapons or contraband; there was no cause in her specific case to believe that she might possess either; and

when strip-searched, she had been at the Detention Center for one and one-half hours without even a pat-down search. An indiscriminate strip search policy routinely applied to detainees such as Logan along with all other detainees cannot be constitutionally justified simply on the basis of administrative ease in attending to security considerations. *See Tinetti v. Wittke*, 479 F.Supp. 486, 490–91 (E.D.Wis.1979), *aff'd*, 620 F.2d 160 (7th Cir. 1980).

The district court's contrary conclusion, reflected in its posttrial denial of all declaratory and injunctive relief, was in error. This necessitates reversal and remand for entry of an appropriate decree declaring unconstitutional the policy as it was stipulated to exist at the time of Logan's strip search, and granting a permanent injunction against its future enforcement in that form by those responsible.

■ In this connection, we take notice from the record in another case, *DeMier v. Arlington County*, Civ. Action No. 80–1086–A, slip op. at 2 (E.D.Va., May 12, 1981) (unpublished) that in December 1980, Sheriff Gondles revised the strip search policy on a trial basis, making searches mandatory only when probable cause exists to believe a particular detainee is concealing contraband. Notwithstanding that this revised policy or some other may be the currently existing one, Logan's claim and right to declaratory and injunctive relief are not thereby mooted. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *United States v. Hunter*, 459 F.2d 205, 219 (4th Cir. 1972); *Lankford v. Gelston*, 364 F.2d 197, 202–03 (4th Cir. 1966); *Tinetti v. Wittke*, 479 F.Supp. at 488–90.

### IV

Reversal and remand is also required in respect of the directed verdicts in favor of the defendants Arlington County, Sheriff Clements, and Deputy Sachtleben given during the jury trial of Logan's damages claims. Whether the verdicts were directed in favor of the individual defendants, Clements and Sachtleben, on the basis that the

strip search policy as applied to Logan was constitutional, or on the basis that as to each the defense of good faith immunity had been established,[7] the district court was in error. As we have indicated, the undisputed evidence established as a matter of law that the policy as applied was unconstitutional. That leaves only the good faith defense as a possibly valid basis, and neither would it suffice as a basis for a directed verdict.

 In this type § 1983 action, the good faith immunity of individual police officers is an affirmative defense to be proved by the defendant, *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980), under the test of police officer immunity to monetary liability expressed, for example, in *Pierson v. Ray*, 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288 (1967). Therefore verdicts properly could have been directed for these two defendants on that basis only if the evidence established as a matter of law that each acted, the one in promulgating and maintaining, the other in carrying out, a policy that each, at the critical time, "reasonably believed [was] valid, [though it] was later held unconstitutional, on its face or as applied." *Pierson*, 386 U.S. at 555, 87 S.Ct. at 1218. We hold that the evidence did not conclusively establish this defense as to either Clements or Sachtleben, but that on the evidence adduced the issue of the good faith of each, in the special § 1983 sense, was one of fact for the jury under appropriate instructions as to the burden of proof and the substantive elements of the defense.

The issue as to Sheriff Clements is whether, given the knowledge of existing law with which he could fairly be charged as chief law enforcement officer of the County, he could reasonably have believed his policy then to be constitutionally valid. The issue as to Deputy Sachtleben is somewhat different. Had the evidence indisputably showed that she simply applied Sheriff Clements' policy as promulgated, we agree that her justifiable assumption of its presumptive validity would have established

her good faith immunity defense. *See, e. g., Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980). But the evidence was in dispute on this very issue. One of the critical, and certainly most obvious, elements in the *Bell v. Wolfish* balancing inquiry into the reasonableness of a strip search is "the place in which it is conducted." 441 U.S. at 559, 99 S.Ct. at 1884. It is apparently undisputed that the policy as promulgated by Sheriff Clements contemplated that strip searches would be conducted in areas effectively screened from general view. While an enforcing officer might reasonably believe a policy with such a privacy aspect valid simply because it was promulgated by a superior, the reasonableness of her belief in its validity if it was applied in violation of that privacy aspect would present quite a different issue. We think that, as a matter of law, no police officer in this day and time could *reasonably* believe that conducting a strip search in an area exposed to the general view of persons known to be in the vicinity—whether or not any actually viewed the search—is a constitutionally valid governmental "invasion of [the] personal rights that [such a] search entails." *Id.* Whether the room in which Logan was searched was so exposed to general view was, on the evidence adduced, in direct dispute.

Upon remand, Logan is entitled to a judgment against defendants Clements and Sachtleben for all damages determined by a jury to have been proximately caused by the strip search, unless those defendants can establish before a jury their respective defenses of good faith immunity (or any others available to them) in accordance with this opinion. In discussing these concededly difficult factual issues of "good faith" and holding them not subject to resolution by directed verdict on the evidence adduced, we, of course, express no opinion on their merits, either on the evidence as presented on the earlier trial or as it may be presented upon remand.

 As earlier indicated, Logan's strip search claim for damages against Arlington

---

7. *See* note 6 *supra*.

County has not been formally disposed of by any order of the district court of which we are aware, and on appeal the parties have disagreed as to whether it may have been formally abandoned in pretrial proceedings. Upon remand, this question must be addressed by the district court. First, it should rule whether, as a procedural matter, the claim has been abandoned or otherwise procedurally defaulted by Logan. If it is determined that the claim has not been so lost, then the court must address the question whether the strip search policy as promulgated and maintained by Sheriff Clements at the critical time was directly chargeable under Virginia law to Arlington County as its own policy. *See Monell v. Department of Social Services*, 436 U.S. at 690–95, 98 S.Ct. at 2035–38. If it is found so chargeable, then Logan is entitled to a judgment against Arlington County for all damages proximately caused by the strip search as determined by a jury, the County being entitled to no immunity defense. *Owen v. City of Independence*, 445 U.S. at 638, 100 S.Ct. at 1409.

### V

In view of our disposition, it is unnecessary to consider Logan's challenge to certain evidentiary rulings of the district court.

▮ We find no merit in Arlington County's contention that all claims against it are barred by the one-year statute of limitations in Va. Code § 8.01–248 (1977). The applicable statute is Va. Code § 8.01–243 A (1977) under whose two-year period the claims are not barred. *Johnson v. Davis*, 582 F.2d 1316, 1318–19 (4th Cir. 1978).

The judgment of the district court is affirmed in part and reversed and remanded in part for further proceedings in conformity with this opinion.

*AFFIRMED IN PART, REVERSED AND REMANDED IN PART.*