**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2174**

TREY SIMS,

　　　　Plaintiff - Appellant

　　v.

KENNETH E. LABOWITZ, Administrator pursuant to Code of Va. sect. 64.2-454
of the Estate of David E. Abbott,

　　　　Defendant - Appellee

　　and

CLAIBORNE RICHARDSON,

　　　　Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Claude M. Hilton, Senior District Judge.  (1:16-cv-00572-CMH-MSN)

Argued:  September 14, 2017　　　　　　　　Decided:  December 5, 2017

Before KING, KEENAN, and DIAZ, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Keenan
wrote the majority opinion, in which Judge Diaz joined.  Judge King wrote a dissenting
opinion.

Victor M. Glasberg, Maxwelle C. Sokol, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant. Julia Bougie Judkins, BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C., Fairfax, Virginia, for Appellee.

———————————

BARBARA MILANO KEENAN, Circuit Judge:

In 2014, David E. Abbott, a detective with the Manassas City Police Department in Virginia, investigated allegations that 17-year-old Trey Sims used his cellular telephone to send sexually explicit photographs and video recordings of himself to his 15-year-old girlfriend. During the course of the investigation, Abbott obtained a search warrant authorizing photographs of Sims' naked body, including his erect penis. When Abbott executed the warrant, he allegedly demanded that Sims manipulate his penis to achieve an erection. Sims unsuccessfully attempted to comply with Abbott's order. The civil action before us is based on these alleged events.

Abbott died before the present case was filed. Sims therefore initiated this action against Kenneth Labowitz, the administrator of Abbott's estate under Virginia Code § 64.2-454 (the Administrator).[1] Sims asserted claims for damages under 42 U.S.C. § 1983, alleging that the search of his person violated his Fourth Amendment right of privacy or, alternatively, his right of substantive due process under the Fourteenth Amendment.[2] Sims also brought a claim under 18 U.S.C. § 2255(a) alleging that, as a

---

[1] Sims also named the Assistant Commonwealth's Attorney for Prince William County, Virginia, Claiborne T. Richardson, II, as a defendant. The district court granted Richardson's motion to dismiss, holding that Richardson was absolutely immune from suit because his conduct was performed in the course of his prosecutorial duties. Sims does not challenge this aspect of the district court's judgment.

[2] Sims also alleged additional Section 1983 claims: (1) that his rights under the Fourth Amendment were violated based on the detention order authorizing the removal from his home to the detention center; and (2) that Richardson and Abbott conspired to interfere with Sims' constitutional rights. Sims does not challenge the district court's dismissal of these claims on appeal. Sims advanced a final Section 1983 claim, namely, (Continued)

3

result of the search, he was the victim of manufactured child pornography. The district court determined that the Administrator was entitled to qualified immunity on the Section 1983 claims, and accordingly dismissed that portion of Sims' action. The court also dismissed the remainder of Sims' complaint.

Upon our review, we reverse the district court's judgment with respect to the Section 1983 claim alleging a Fourth Amendment violation. Construing the facts in the light most favorable to Sims, a reasonable police officer would have known that attempting to obtain a photograph of a minor child's erect penis, by ordering the child to masturbate in the presence of others, would unlawfully invade the child's right of privacy under the Fourth Amendment. We therefore remand Sims' Section 1983 claim alleging a Fourth Amendment violation to the district court for further proceedings. We affirm the district court's dismissal of Sims' remaining claims, including his claim for damages under 18 U.S.C. § 2255(a) as an alleged victim of child pornography.

I.

Sims alleged the following facts, which we accept as true in our review of the district court's dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6).

---

that Abbott's threat to forcibly inject Sims with erection-producing medication violated the Fourteenth Amendment's substantive due process clause. We conclude that the district court did not err in dismissing this claim, because mere verbal threats directed toward Sims' attorney did not rise to the level of a constitutional violation with respect to Sims.

*See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 601 (4th Cir. 2015). In June 2014, the Commonwealth of Virginia filed felony charges against Sims as a juvenile for manufacturing and distributing child pornography in violation of Virginia Code §§ 18.2-374.1, 18.2-374.1:1. The charges arose based on Sims' conduct of "film[ing] a video of himself and fondling his erect penis" and sending the video to his minor girlfriend using his cellular telephone. After Sims declined to enter into a plea agreement, the Assistant Commonwealth's Attorney for Prince William County, Virginia, Claiborne T. Richardson, II, sought a nolle prosequi, and the juvenile court dismissed the charges against Sims.

The investigation against Sims continued and, at Richardson's direction, Abbott obtained a search warrant from a Virginia magistrate. The warrant authorized a search for "[p]hotographs of the genitals, and other parts of the body of [Sims] that will be used as comparisons in recovered forensic evidence from the victim and suspect's electronic devices. This includes a photograph of the suspect's erect penis."

Richardson and Abbott also obtained a detention order for Sims, which authorized Abbott to transport Sims from his home to a juvenile detention center. In a "locker room" in the center, Abbott and two uniformed, armed officers executed the search warrant. Abbott ordered Sims to "pull down his pants so that photos could be taken of his penis." After Sims complied, Abbott instructed Sims "to use his hand to manipulate his penis in different ways" to obtain an erection. However, Sims was unable to achieve an erection. Nonetheless, Abbott took photographs of Sims' flaccid penis using Abbott's cellular telephone.

5

The next day, Sims was arraigned on charges of possession and distribution of child pornography. Abbott informed Sims' attorney that Abbott again "proposed to take photographs of [Sims'] erect penis" to be used as evidence. Abbott also stated that if Sims could not achieve an erection, Sims would be taken "to a hospital to give him an erection-producing injection." Abbott obtained a second search warrant from a Virginia magistrate, which authorized additional photographs of Sims' naked body, including his erect penis.

Before the second search warrant was executed, however, the Manassas City Police Department issued a statement explaining that the department's policy did not permit "invasive search procedures of suspects in cases of this nature." Additionally, the Prince William County Commonwealth's Attorney, Paul B. Ebert, condemned the first search of Sims.

Sims' attorney filed a motion to quash the second search warrant. Before the juvenile court ruled on the motion, Richardson informed the court that the Commonwealth "would let the warrant expire without service." Richardson also stipulated that he would not use as evidence the photographs of Sims' penis that had been taken pursuant to the first search warrant.

After the juvenile court reduced the charges to felony possession of child pornography, the court found that the evidence was sufficient to convict Sims but did "not make a finding of guilt[]" and suspended imposition of sentence for one year. The court ordered Sims to comply with certain terms of probation, including performing 100 hours of community service, barring Sims from "access to social media," and prohibiting

6

Sims from sending "text messages." After Sims completed the terms of his probation in August 2015, the court dismissed the charge against him.

The Administrator filed a motion to dismiss with prejudice under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion, concluding that the Administrator was entitled to qualified immunity on the Section 1983 claims. The district court also dismissed Sims' claim for damages brought under 18 U.S.C. § 2255(a)(1). Sims timely filed the present appeal.

## II.

## A.

We first consider Sims' argument that his right of privacy under the Fourth Amendment was violated when Abbott attempted to obtain a photograph of Sims' erect penis and ordered him to masturbate in the presence of others. Sims contends that any reasonable officer would have known that this conduct violated Sims' Fourth Amendment right of privacy and that, therefore, the Administrator was not entitled to the protection of qualified immunity.

In response, the Administrator maintains that Sims failed to allege sufficient facts to support a Fourth Amendment violation because Abbott's search did not place Sims at risk of physical harm, and because the search did not physically invade Sims' body. The Administrator alternatively contends that even if Abbott's conduct violated the Fourth Amendment, such right was not clearly established at the time of the search because

7

Abbott acted pursuant to a validly issued search warrant. We disagree with the Administrator's arguments.

We review de novo the district court's dismissal of Sims' complaint on the ground of qualified immunity. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). As previously explained, we construe the facts alleged in the light most favorable to Sims. *Id.* at 309.

The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016). Qualified immunity seeks to balance two interests, namely, the "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Graham*, 831 F.3d at 182 (quoting *Pearson*, 555 U.S. at 231). To avoid dismissal of a complaint after a qualified immunity defense is raised, a plaintiff must allege sufficient facts to set forth a violation of a constitutional right, and the court must conclude that this right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232.

Although we may consider either prong of the qualified immunity inquiry first, we begin by examining the constitutional right advanced by Sims. *See Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892, 898-99 (4th Cir. 2016). This approach is beneficial here because our inquiry addresses "questions that do not

8

frequently arise" and, therefore, "promotes the development of constitutional precedent." *Pearson*, 555 U.S. at 236.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966).

A search is lawful only when it is reasonable. *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001). When, as in the present case, a search involves "movement of clothing to facilitate the visual inspection of a [person's] naked body," the search qualifies as a type of "sexually invasive search." *United States v. Edwards*, 666 F.3d 877, 882-83 (4th Cir. 2011) (citations omitted). To determine whether a sexually invasive search is reasonable, we employ the test adopted in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). *See King v. Rubenstein*, 825 F.3d 206, 214-15 (4th Cir. 2016); *Edwards*, 666 F.3d at 883.

Under the *Bell* framework, we balance the invasion of personal rights caused by the search against the need for that particular search. 441 U.S. at 559. Pursuant to *Bell*, we examine the search in its complete context and consider the following factors: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was performed. *Id.*

In the present case, the scope of the intrusion and the manner in which the search allegedly was performed involve overlapping inquiries. At the outset, we observe that a

9

sexually invasive search "constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual." *Woods v. Clemons*, 89 F.3d 922, 929 (1st Cir. 1996) (citation omitted). Courts have described such searches, including strip searches, as terrifying, demeaning, and humiliating. *Mary Beth v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (citations omitted). When the scope of a search exceeds a visual inspection of an individual's naked body, the magnitude of the intrusion is even greater. *See Amaechi*, 237 F.3d at 363-64.

In *King v. Rubenstein*, we addressed the invasive nature and manner of a search of an inmate who was subjected to surgery to remove penile implants. 825 F.3d at 214-15. We explained that the surgery required cutting "beneath the skin into a sensitive, private body part," and involved "risk, trauma, and pain," as well as emotional anguish. *Id.* at 215. In holding that the inmate sufficiently alleged that the surgery was an unreasonable search under the Fourth Amendment, we stated that the nature of the surgery itself violated the inmate's "interest of bodily integrity," which "involves the most personal and deep-rooted expectations of privacy." *Id.* (citation omitted).

Although the intrusion suffered by Sims was neither physically invasive nor put him at risk of direct physical harm, the search nonetheless was exceptionally intrusive. First, as alleged by Sims, Abbott sought to do more than visually inspect Sims' genitalia. He attempted to photograph Sims' penis in a sexually aroused state. Further, the manner that Abbott employed to execute the warrant, namely, ordering Sims to masturbate to obtain an erection, required that Sims perform a sex act in the presence of three armed officers. Such alleged conduct necessarily invaded Sims' bodily integrity even though no

part of Sims' body was penetrated or physically harmed. Abbott's search directed at forcing Sims to achieve an erection intruded "upon an area in which our society recognizes a significantly heightened privacy interest." *See Winston v. Lee*, 470 U.S. 753, 767 (1985). Requiring Sims to masturbate in the presence of others, like searches involving physical penetration of genitalia, constituted "the ultimate invasion of personal dignity." *Amaechi*, 237 F.3d at 363-64; *see also King*, 825 F.3d at 215.

Moreover, we observe that this sexually intrusive search was rendered more egregious by being conducted in a manner that would instill fear in Sims. *See Edwards*, 666 F.3d at 884-85. Here, Sims alleged that he was "surrounded" by three armed officers as he questioned whether he was required to submit to Abbott's orders. Upon Abbott's insistence, Sims ultimately attempted to comply. Sims further alleged that the search caused him to suffer emotional harm. *Winston*, 470 U.S. at 761-63 (explaining that intrusions without risk of physical harm nonetheless damage the individual's sense of personal privacy and security). Accordingly, both the outrageous scope of the sexually intrusive search and the intimidating manner in which the search was conducted weigh strongly against any finding that the search was reasonable.

Under the *Bell* framework, we next consider the justification for the search. *See* 441 U.S. at 559. Abbott sought to obtain photographs of Sims' erect penis for an evidentiary purpose, namely, to compare these photographs with the forensic evidence obtained from the cellular telephones seized from Sims and his girlfriend. However, the Commonwealth ultimately agreed not to use the photographs of Sims' body as evidence, and the juvenile court nevertheless concluded that the evidence was sufficient to find that

11

Sims had committed the offense of possession of child pornography. Thus, the record demonstrates that there was no evidentiary need to seek a photograph of Sims' erect penis. *See Winston*, 470 U.S. at 765-66 (holding that because the prosecutor had substantial evidence available regarding the origin of the bullets sought to be extracted from the defendant via surgery, the need for surgery was reduced).

We cannot perceive any circumstance that would justify a police search requiring an individual to masturbate in the presence of others. *See id.* at 767 (explaining that when searches intrude upon heightened privacy interests, a more substantial justification is required). Sexually invasive searches require that the search bear some discernible relationship with safety concerns, suspected hidden contraband, or evidentiary need. *See Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir. 1981). Thus, we discern no justification for Abbott's alleged conduct executing the search of Sims' body, and we conclude that the semi-private location of the search did not mitigate the overall circumstances of this exceptionally intrusive search. Accordingly, we hold that Sims sufficiently alleged a violation of his Fourth Amendment right to be free from the sexually invasive search of his person.

We therefore turn to consider the second prong of the qualified immunity analysis, namely, whether Abbott should have known that his combined acts of (1) seeking to obtain a photograph of Sims' erect penis, and (2) demanding that Sims masturbate in the presence of others to achieve an erection, was unlawful under clear precedent at the time the search occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To be clearly

12

established, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Id.*

In this analysis, we review "cases of controlling authority in [this] jurisdiction, as well as the consensus of cases of persuasive authority from other jurisdictions." *Amaechi*, 237 F.3d at 363 (internal quotation and citation omitted). We observe that the "exact conduct at issue need not" previously have been deemed unlawful for the law governing an officer's actions to be clearly established. *Id.* at 362 (citing *Anderson*, 483 U.S. at 640). Instead, we must determine whether pre-existing law makes "apparent" the unlawfulness of the officer's conduct. *Clem v. Corbeau*, 284 F.3d 543, 553 (4th Cir. 2002) (quoting *Anderson*, 483 U.S. at 640). "Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked." *Id.* (internal quotation and citation omitted).

The Supreme Court and this Court have developed an entire body of jurisprudence establishing limits on sexually intrusive searches. This precedent has made clear that when a search of a person's body would significantly invade that individual's right of privacy, the basis for the search requires greater justification under the Fourth Amendment. *Winston*, 470 U.S. at 767; *see, e.g.*, *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330-38 (2012) (holding that invasive search procedures at jail struck a reasonable balance between inmate privacy and the security needs of the institutions); *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983) (explaining that an officer cannot disrobe an arrestee publicly without justifying factors); *Bell*, 441 U.S. at

13

558-60 (holding that practice of conducting visual body-cavity searches of inmates following contact visits did not violate the Fourth Amendment because of significant security interests); *King*, 825 F.3d at 217 (determining that inmate sufficiently alleged Fourth Amendment violation based on surgery to remove penile implants because there was no penological justification); *Edwards*, 666 F.3d at 884-85 (concluding that sexually invasive search was unlawful because dangerous manner in which the officer removed contraband outweighed interest in retrieving contraband); *Amaechi*, 237 F.3d at 365-66 (finding no justification for officer's pat down search to include touching arrestee's buttocks and penetrating her exposed genitalia); *Logan*, 660 F.2d at 1013 (holding that inmate's strip search bore no relationship to security needs at detention center).[3] And here, as we already have explained, there was neither an evidentiary justification for the alleged search to obtain a photograph of Sims' erect penis, nor could there have been a valid reason for demanding that Sims masturbate in the presence of others.

We observe, nevertheless, that there are state and federal district court decisions involving circumstances in which officers lawfully conducted searches to visually inspect a suspect's penis. *See Curtis v. Clarke*, 2012 WL 2342536, at \*2 (E.D. Va. June 19, 2012); *Mata v. Hubbard*, 2011 WL 6210668, at \*8 (C.D. Cal. Oct. 25, 2011); *Roadcap v. Commonwealth*, 653 S.E.2d 620, 622-23 (Va. Ct. App. 2007); *Willis v. Commonwealth*,

---

[3] As the dissent points out, most of the decisions addressing the legality of sexually invasive searches do not involve searches conducted pursuant to warrants. But this distinction only highlights the plainly unreasonable nature of the search in the present case, because sexually invasive searches typically occur in the context of exigent circumstances.

1997 WL 39801, at *2 (Va. Ct. App. Feb. 4, 1997). However, the searches in these cases were justified by an evidentiary need to confirm certain characteristics of the perpetrator's genitalia, and none of the searches required that the individual achieve an erection or masturbate in the presence of others. Thus, the type of search conducted here by Abbott far exceeded the intrusions into privacy described in those state and federal district court decisions.

Additionally, the fact that Sims was a minor child at the time of the alleged events should have caused a reasonable officer even greater concern in seeking a warrant and in executing the sexually invasive search. The Supreme Court has explained that minors are more susceptible than adults to influence and psychological damage. *See Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) (recognizing that youth is mitigating factor in defendant's commission of crime). Accordingly, officials taking minors into custody must "preserv[e] and promot[e] the welfare of the child." *Schall v. Martin*, 467 U.S. 253, 265 (1984) (citation omitted). In conducting sexually invasive searches of minors, officials must employ extreme caution because minors are "especially susceptible to possible traumas" affiliated with such searches. *N.G., S.G. ex rel. S.C. v. Connecticut*, 382 F.3d 225, 244 (2d Cir. 2004) (citation omitted). Thus, Abbott should have been aware that any assessment of the legality of a sexually invasive search of a 17-year-old required additional considerations based on the child's age.

Because there was no justification for the alleged search to photograph Sims' erect penis and the order that he masturbate in the presence of others, we conclude that well-established Fourth Amendment limitations on sexually invasive searches adequately

15

would have placed any reasonable officer on notice that such police action was unlawful. *See Amaechi*, 237 F.3d at 365. Thus, the alleged conduct plainly did not qualify as the type of "bad guesses in gray areas" that qualified immunity is designed to protect. *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).

We further observe that the Administrator is not entitled to invoke qualified immunity simply because no other court decisions directly have addressed circumstances like those presented here. *See Clem*, 284 F.3d at 553. For good reason, most outrageous cases of constitutional violations rarely are litigated. *See K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) (explaining that never before had there been a case accusing welfare officials of selling foster children into slavery, but those officials nevertheless would not be entitled to immunity). Abbott's conduct affronted the basic protections of the Fourth Amendment, which at its core protects personal privacy and dignity against unjustified intrusion by governmental actors. *See Schmerber*, 384 U.S. at 767.

Our conclusion is not altered by the Administrator's insistence that Abbott's conduct was not unlawful because he first obtained a warrant to take a photograph of Sims' erect penis. As a general matter, search warrants provide officers a "shield of immunity" with respect to challenged searches because a neutral magistrate has considered whether the warrant is supported by probable cause and justifies the intrusion into an individual's privacy. *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). But the fact that a search warrant has been obtained "do[es] not confer immunity if it was

16

objectively unreasonable" for the officer to rely on the warrant. *See Graham*, 831 F.3d at 183 (citations omitted) (discussing arrest warrant). Here, the obvious, unconstitutional invasion of Sims' right of privacy that was required to carry out the warrant rendered reliance on that warrant objectively unreasonable, thereby eliminating the protection that a search warrant typically would have afforded an executing officer.[4] *See Malley v. Briggs*, 475 U.S. 335, 341, 346 n.9 (1986). For these reasons, we conclude that the district court erred in dismissing Sims' Section 1983 Fourth Amendment claim on the ground of qualified immunity.[5]

## B.

Finally, we address Sims' argument that the district court erred in dismissing his claim that he was entitled to damages, under 18 U.S.C. § 2255(a), as a victim of an offense of child pornography. Sims contends that because Abbott took photographs of Sims' penis and required Sims to masturbate, Abbott necessarily created child pornography. We disagree with Sims' argument.

---

[4] Additionally, apart from the issue whether the warrant was objectively reasonable, the warrant did not purport to authorize Abbott's conduct of requiring Sims to masturbate in the presence of the officers.

[5] We reject Sims' alternative argument that the Administrator was not entitled to qualified immunity because Abbott's conduct surrounding the search "shocks the conscience," in violation of the Fourteenth Amendment's substantive due process clause. The "Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (considering under Fourth Amendment arrestees' Section 1983 claims against police officers based on allegedly unconstitutional arrest warrant).

17

Under 18 U.S.C. § 2255(a), victims of child pornography offenses can bring a civil action against their perpetrators. The statutory pornography offense relied on by Sims prohibits an individual from persuading or coercing a minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). "Sexually explicit conduct" includes "graphic or simulated *lascivious* . . . masturbation" and "graphic or simulated *lascivious* exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A) (emphasis added).

The term "lascivious conduct" means "tending to excite; lust; lewd; indecent; or obscene." *See* "Lascivious," *Black's Law Dictionary* (10th ed. 2014). Because inquiry into whether particular conduct qualifies as lascivious is not straightforward, federal appellate courts required to make this determination often consult a series of factors first announced in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986). [6] *See United States v. Carroll*, 190 F.3d 290, 297 (5th Cir. 1999), *vacated on other grounds*, 227 F.3d 486 (5th Cir. 2000); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999); *United States v. Amirault*, 173 F.3d 28, 31-32 (1st Cir. 1999); *United States v. Wolf*, 890 F.2d 241, 243-46 (10th Cir. 1989); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

---

[6] The *Dost* factors include "(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive . . . ; (3) whether the child is depicted in an unnatural pose or inappropriate attire . . . ; (4) whether the child is fully or partially clothed or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." 636 F. Supp. at 832.

We likewise conclude that the *Dost* factors offer helpful guidance in determining whether conduct is lascivious, within the meaning of 18 U.S.C. § 2256(2)(A).

The factor most critical to our analysis is the question whether the visual display of the victim's genitalia was intended to elicit a sexual response in the viewer. *See Dost*, 636 F. Supp. at 832. Here, Abbott took photographs of Sims' penis and ordered Sims to masturbate pursuant to the execution of a search warrant. The purpose of the warrant was to obtain evidence to use in the investigation of alleged criminal conduct by Sims, not to elicit a sexual response in the viewer. Even though we previously explained that the search as alleged was unjustified and unlawful, this conclusion does not transform the purported purpose of the search into one involving lascivious intent.

Sims fails to allege that Abbott or the two other officers present during the search obtained the photographs of Sims' body for a lascivious purpose. Even accepting as true Sims' allegation that Abbott previously had been accused of unlawful sexual conduct with minors, the fact that Abbott acted for the purpose of executing a warrant approved by two public officials, an assistant prosecutor and a magistrate, defeats Sims' claim in these circumstances.

Accordingly, we conclude that Sims did not plausibly allege that Abbott acted with the purpose of sexually exciting himself or the two other officers who were present when the alleged acts occurred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). We therefore affirm the district court's dismissal of this claim.

III.

19

For these reasons, we reverse the district court's ruling that the Administrator was entitled to qualified immunity on the Section 1983 claim alleging a Fourth Amendment violation, and we remand this claim to the district court for further proceedings. We affirm the district court's dismissal of Sims' remaining claims, including his claim brought under 18 U.S.C. § 2255.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*

KING, Circuit Judge, dissenting:

I write separately to dissent from the majority's denial of Detective Abbott's qualified immunity claim. With great respect for my good colleagues, their decision fails to recognize the controlling facts that undermine the § 1983 claim of plaintiff Sims. That is, Detective Abbott was acting pursuant to the advice of counsel and adhering to a court order. In my view, Abbott's actions were entirely consistent with applicable law and the Fourth Amendment. To explain my position more fully, this dissenting opinion contains three short segments. First, I emphasize the sanctity and importance of court orders. Second, I review the controlling facts and some guiding legal principles. Finally, I explain that Detective Abbott did not contravene any constitutional right and that he is entitled to qualified immunity. Put simply, I would affirm the district court.

A.

A duly issued search warrant is a court order and is entitled to be respected and complied with, particularly by law enforcement officers, members of the public, and the courts. The simple rule that a court order is to be obeyed is foundational to our legal system and an independent judiciary. *See* Stephen G. Breyer, *Judicial Independence in the United States*, 40 St. Louis U. L.J. 989, 994-96 (1996) (emphasizing importance of court orders in maintaining the rule of law in an orderly society); *see also Cooper v. Aaron*, 358 U.S. 1, 17-19 (1958) (holding that courts and public officials are bound by constitutional rulings of Supreme Court). As Alexander Hamilton explained in *The Federalist* papers, the effective administration of justice "contributes, more than any other circumstance, to impressing upon the minds of the people affection, esteem, and

21

reverence toward the government." The Federalist No. 17 (Alexander Hamilton); *see also* Breyer, *Judicial Independence*, 40 St. Louis U. L.J. 989, 995-96 (1996) (emphasizing that "the most important reason to think that a judge's decision will be efficacious is cultural, rather than institutional"). The Supreme Court itself once emphasized, in a proceeding from this Circuit, that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *See Hutto v. Davis*, 454 U.S. 370, 375 (1982).

When a judicial officer — such as a state court magistrate — has issued a search warrant upon probable cause, specifying therein that which is to be searched and seized, it is unreasonable to require the officer charged with executing the warrant to reject the judicial decision and disobey the court's directive. *See United States v. Leon*, 468 U.S. 897, 920 n.21 (1984) (citing Attorney General's Task Force on Violent Crime, Final Report (1981), for the proposition that police officers have a "sworn duty to carry out [the] provisions" of search and arrest warrants). We have consistently recognized and applied these guiding principles. As we explained a few years back, "It would be plainly unreasonable to rule that the [] officers . . . must take issue with the considered judgment of an assistant [prosecuting] Attorney and the [] magistrate." *See Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000).

The majority's ruling today — that Detective Abbott can be personally liable for failing to disobey the search warrant requiring Sims to be promptly searched — could lead law officers to second-guess court orders and avoid judgment calls in gray areas. As

22

our friend Judge Wilkinson aptly emphasized more than twenty-five years ago, "If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *See Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991).

B.

1.

We have consistently encouraged law enforcement officers to seek and secure search "warrants because magistrates from their detached perspective serve as the essential checkpoint between the Government and the citizen." *See Torchinsky*, 942 F.2d at 261; *see also United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) ("The Fourth Amendment generally requires police to secure a warrant before conducting a search."). Although unwarranted searches may sometimes properly occur — for example, in exigent circumstances, in searches incident to lawful arrests, in plain view seizures, in vehicular searches, and with consent — a warrant is generally required by the Fourth Amendment for searches and seizures. In this situation, Detective Abbott complied with that constitutional mandate, and his actions were carried out pursuant to a lawful search warrant.

Detective Abbott personally applied to the Virginia magistrate for the search warrant, but he did so only after consulting with, receiving advice from, and complying

with the directives of the Commonwealth's Attorney for Prince William County.[1]  We have recognized that, although obtaining a search warrant on the advice of the prosecutor does not automatically render the search reasonable, it is a compelling factor for consideration.  *See Buonocore v. Harris*, 134 F.3d 245, 253 (4th Cir. 1998).  In our *Wadkins* decision, we explained that, in assessing a detective's qualified immunity claim, the "most compelling aspect of [the] conference [between the detective and prosecutor] is clear:  at its conclusion, the Commonwealth's Attorney, on behalf of the Commonwealth of Virginia, authorized warrants for the [search] of [the suspect]."  *See* 214 F.3d at 542.  We therein also ruled that, even if a warrant is later deemed invalid, law enforcement officers are not required to "secondguess the legal assessments of trained lawyers" and need not disregard the warrant in the first instance.  *Id*. at 543.

2.

In his affidavit for the search warrant that he later executed, Detective Abbott sought photos of Sims to "be used as comparisons [to] recovered forensic evidence from the victim and suspect's electronic devices."  *See* Supp. J.A. 74-75.  Finding probable cause shown, the magistrate in Prince William County issued the search warrant at 5:03 p.m. on June 3, 2014.  The warrant provided as follows:

[1] On this record, search warrants were issued on June 3, 2014, and again on July 1, 2014, by two different magistrates.  *See* Supp. J.A. 72, 76.  The June warrant was the only one executed.  In executing the June warrant, Abbott was unable to obtain some of the photos being sought.  Because the prosecutor and the detective agreed that additional photos were necessary, Abbott was directed to seek the July warrant.  That warrant was never executed and was voided.  (Citations herein to "Supp. J.A. ___" refer to the contents of the Supplemental Joint Appendix filed by the parties in this appeal.)

To any authorized officer:

*You are hereby commanded* in the name of the Commonwealth to forthwith search the following place, person, or thing either in day or night:

Trey Austin Sims, Date of Birth []. A white male, approximately 5'10" tall and approximately 150 pounds.

For the following property, objects and/or persons:

Photographs of the genitals, hands, and other parts of the body of Trey Sims that will be used as comparisons in recovered forensic evidence from the victim and suspect's electronic devices. This includes a photograph of the suspect's erect penis.

*See* Supp. J.A. 72-75 (emphasis added). Approximately an hour after the magistrate issued the forthwith search warrant, at 6:10 p.m., Detective Abbott and two other officers executed it. On June 5, 2014, Abbott reported to the court in the return that "[t]he following items, and no others, were seized under authority of this warrant: *Photos*." *Id.* at 73 (emphasis added).

C.

In 2001, the Supreme Court established a two-pronged analysis for a qualified immunity claim interposed by a law enforcement officer. That assessment first requires a determination of whether the officer's conduct violated a constitutional right. Second, if a constitutional violation has been shown, the court must decide whether the constitutional right was clearly established at the time. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). In 2009, the Court authorized that analysis to be applied in a sequence reserved to the court's discretion. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1.

25

In the context of searches and seizures, "the ultimate touchstone of the Fourth Amendment is reasonableness" under the circumstances. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). For example, other than the well-recognized exceptions, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment." *See Katz v. United States*, 389 U.S. 347, 357 (1967). On the other hand, the existence of a search warrant creates a rebuttable presumption that the search was reasonable. *See Torchinsky*, 942 F.2d at 262. And for the search to be reasonable, it does not have to be conducted flawlessly nor by the least intrusive means. *See Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 629 n.9 (1989). There is little deterrent to excluding evidence where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *See Leon*, 468 U.S. at 920. Thus, the existence of a search warrant plays a significant role in the determination of whether a search and seizure was reasonable. This principle is important, and it exists because the search warrant mandate insures the reliable and detached scrutiny of a neutral magistrate, rather than the judgment of a single law officer. *See Johnson v. United States*, 333 U.S. 10, 14 (1948). Put succinctly, where a police officer has sought and obtained a search warrant and acted within its scope, the resulting search is presumptively reasonable.

In this situation, the safeguards guaranteed by the Fourth Amendment were carefully observed — i.e., the search of Sims was conducted pursuant to a search warrant issued by the neutral magistrate, and it was supported by probable cause. *See Johnson*, 333 U.S. at 14. This was therefore a warranted search, carried out under the law of

26

Virginia and in compliance with Fourth Amendment jurisprudence. Because Abbott obtained a search warrant and acted within its scope, his search of Sims is presumptively reasonable. *See Torchinsky*, 942 F.2d at 262. Therefore, the § 1983 claim alleged by Sims plainly fails the first prong of *Saucier*, that is, no constitutional right was contravened in these circumstances.

Strikingly, Detective Abbott did not go directly to the Prince William County magistrate seeking the search warrant. He went first to that county's Commonwealth's Attorney and solicited the advice and approval of the prosecutor. We have recognized — in another qualified immunity case arising in the Old Dominion — that an investigating detective's "conference with the Commonwealth's Attorney and the subsequent issuance of the warrants by a neutral and detached magistrate weigh heavily *toward* a finding that [the detective] is immune." *See Wadkins*, 214 F.3d at 541. Our *Wadkins* decision is precedent here, and it drew heavily on Judge Wilkinson's opinion in *Torchinsky*. As that decision adroitly explained:

> When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.

*See Torchinsky*, 942 F.2d at 262. In executing this search warrant, Detective Abbott was acting pursuant to a court order that he had secured on the advice and direction of the Commonwealth's Attorney. The search was thus reasonable and, in my view, Abbott did not violate any constitutional right.

27

2.

If Detective Abbott somehow contravened a Fourth Amendment right (as the majority rules today), the § 1983 claim alleged by Sims would nevertheless fail under *Saucier*'s clearly established prong, which requires an assessment of "whether the constitutional violation was of a clearly established right." *See Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (en banc). In making that analysis, we are obliged to conduct an objective "reasonable officer test" of Detective Abbott's actions. *See id.* The doctrine of "[q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). To be true to this central tenet of qualified immunity, the right allegedly violated must be defined "at a high level of particularity." *See Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007). As such, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, a constitutional right is clearly established only "when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (alterations and internal quotation marks omitted).

As the district court observed when it rejected Sims's § 1983 claim, "even if this conduct violated Plaintiff's rights, the 'clearly established' standard is not satisfied here." *See Sims v. Richardson*, No. 1:16-cv-572, at 9 (E.D. Va. Sept. 19, 2016), ECF No. 61. The court decisions relied upon by the majority show that there was no clearly established constitutional right — that every reasonable law officer would have

28

recognized — requiring Abbott to disregard the search warrant. *See Anderson v. Creighton*, 483 U.S. 635, 639-641 (discussing objective standard imposed on officers executing warrant for purposes of qualified immunity).

In my view, no reasonable police officer or lawyer would have considered this search warrant, duly issued by the Virginia magistrate, to violate a clearly established constitutional right. Indeed, Detective Abbott actually sought and obtained two search warrants — from two different magistrates — at the behest of the Commonwealth's Attorney. The initial search warrant was the only one executed, but two neutral and detached Virginia magistrates separately found probable cause to exist. *See supra* note 1.

Importantly, nine of the ten court decisions relied upon by the majority to support their view of the clearly established prong involved unwarranted searches. Those decisions therefore could not place any reasonable lawyer — much less a reasonable police officer — on notice that the warranted search carried out by Detective Abbott would violate a clearly established constitutional right.[2]

---

[2] Nearly all of the court decisions relied upon the by the majority — for their ruling that the constitutional right contravened by Abbott was clearly established — involved warrantless searches. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012) (unwarranted strip searches of detainees); *Illinois v. Lafayette*, 462 U.S. 640 (1983) (unwarranted search of shoulder bag); *Bell v. Wolfish*, 441 U.S. 520 (1979) (warrantless searches of pretrial detainees); *King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) (coerced consent and unwarranted removal of penile implants); *United States v. Edwards*, 666 F.3d 877 (4th Cir. 2011) (warrantless strip search incident to arrest); *Amaechi v. West*, 237 F.3d 356 (4th Cir. 2001) (warrantless search invading arrestee's genitalia in public); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir. 1981) (unwarranted visual strip searches of detainees); *Schmerber v. California*, 384 U.S. 757 (1966) (unwarranted blood draw from arrestee); *Woods v. Clemons*, 89 F.3d 922 (1st Cir. 1996) (warrantless search of prison visitors).

(Continued)

29

The majority's ruling — that any reasonable law enforcement officer would have recognized that the search warrant violated a clearly established constitutional right — is not supported by any precedent, much less the compelling precedent that would "have placed the statutory or constitutional question beyond debate." *See al-Kidd*, 563 U.S. at 741. This lack of precedent fails to even create a "gray area" that would require a reasonable police officer to make a close call. *See Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (observing that qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas"). Addressing the merits of *Saucier*'s clearly established prong, I agree with the district court that Abbott's conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Sims*, No. 1:16-cv-572, at 8, ECF No. 61.

As we have recognized heretofore, "there is simply no basis for a rule that would require law enforcement officers to take issue with or second-guess the considered judgments of prosecutors and magistrates." *See Wadkins*, 214 F.3d at 543. Put simply, the search warrant at issue here was properly and legally issued, it was complied with, and Detective Abbott is entitled to qualified immunity.

I respectfully dissent.

---

The Supreme Court's decision in *Winston v. Lee*, the other case relied upon by the majority, involved a court order that had authorized surgical removal of a bullet. *See* 470 U.S. 753 (1985). That decision, however, is readily distinguishable. It had nothing to do with a § 1983 claim or whether a constitutional right was clearly established.